**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
.

| | |
|---|---|
| MARC REICHBART, individually and on behalf of all others similarly situated, | Case No. 2:24-cv-01876-NIQA |
| Plaintiff, | CLASS ACTION |
| v. | |
| FINANCIAL BUSINESS AND CONSUMER SOLUTIONS, INC., | |
| Defendant. | |
| JOSEPH STALLONE, individually and on behalf of all others similarly situated, | Case No. 2:24-cv-01901 |
| Plaintiff, | CLASS ACTION |
| v. | |
| FINANCIAL BUSINESS AND CONSUMER SOLUTIONS, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF COORDINATED PLAINTIFFS' MOTION TO CONSOLIDATE CASES AND APPOINT INTERIM CO-LEAD CLASS COUNSEL**

## TABLE OF CONTENTS

I.  BACKGROUND ...................................................................................................4

II.  ARGUMENT .......................................................................................................5

    A.  The Related Actions Should Be Consolidated ...........................................5

    B.  The Court Should Appoint Interim Co-Lead Class Counsel ....................6

        1.  Appointing a Three-Lawyer Lead Counsel Structure is Appropriate Given the Complexity of the Litigation and Claims ................................................6

        2.  Legal Standard for Lead Counsel Appointment ............................................7

            a.  Proposed Co-Lead Counsel and Their Law Firms Have Performed Substantial Work in Identifying and Investigating the Claims in This Action ...........................................................................................8

            b.  Proposed Co-Lead Counsel and Their Law Firms Have Substantial Knowledge About and Are Experienced in Leading and Successfully Resolving Data Privacy Class Actions....................................................9

            c.  Proposed Co-Lead Class Counsel Are Committed to Representing and Advancing the Interests of the Class ..............................................17

            d.  Additional Factors Supporting Appointment Under Rule 23(g)(1)(B). 18

III.  CONCLUSION ..................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Beture v. Samsung Elecs. Am., Inc.,* No. 17-5757 (SRC),
  2018 U.S. Dist. LEXIS 50413 (D.N.J. Mar. 27, 2018).................................................7

*Cartee-Haring v. Cent. Bucks Sch. Dist.,*
  No. 20-cv-1995, 2021 WL 5506419 (E.D. Pa. Nov. 24, 2021) ..................................5

*Collins v. Rutter's Inc.,* Case No. 1:20-cv-00382,
  2020 U.S. Dist. LEXIS 52214 (M.D. Pa. Mar. 26, 2020)...........................................5

*Demarco v. Avalonbay Cmtys., Inc.,*
  No. 15-628 (JLL), 2015 U.S. Dist. LEXIS 194344 (D.N.J. Mar. 17, 2015) ..............8

*Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.,*
  339 F. 2d 673 (3d Cir. 1964)......................................................................................5

*Fulton-Green v. Accolade, Inc.,*
  No. 18-cv-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019)....................................9

*Gordon v. Chipotle Mexican Grill, Inc.,*
  No. 17-cv-1415, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ..................................9

*Gravley, Sr. v. Fresenius Vascular Care, Inc. d/b/a Azura Vascular Care,*
  No. 2:24-cv-01148-MMB (E.D. Pa. Apr. 30, 2024)...................................................5

*In re Shop-Vac Mktg. & Sales Practices Litig.,*
  No. MDL No. 2380, 2013 U.S. Dist. LEXIS 7023 (M.D. Pa. Jan. 17, 2013) .......7, 8

*In re Terazosin Hydrochloride Antitrust Litig.,*
  220 F.R.D. 672 (S.D. Fla. 2004)...............................................................................11

*Nelson v. Connexin Software Inc.,*
  No. 2:22-CV-04676, 2023 WL 2721657 (E.D. Pa. Mar. 30, 2023) ...........................6

*Outten v. Wilmington Tr. Corp.,*
  281 F.R.D. 193 (D. Del. 2012) ................................................................................10

*Tolmasoff v. General Motors, LLC,*
  No. 16-11747, 2016 U.S. Dist. LEXIS 85101 (E.D. Mich. June 30, 2016) ...............7

**OTHER AUTHORITIES**

Manual for Complex Litigation (4th ed. 2004) ...........................................................3, 7

**RULES**

Fed. R. Civ. P. 23(g) ...........................................................................................*passim*

Fed. R. Civ. P. 23(g)(1) ......................................................................................8

Fed. R. Civ. P. 23(g)(1)(A) .................................................................................8

Fed. R. Civ. P. 23(g)(1)(A)(i) .............................................................................9

Fed. R. Civ. P. 23(g)(1)(A)(iii)-(iii) ...................................................................9

Fed. R. Civ. P. 23(g)(3) ......................................................................................7

Fed. R. Civ. P. 23(g)(4) ......................................................................................8

Fed. R. Civ. P. 42(a) ...........................................................................................*passim*

Plaintiffs Marc Reichbart and Joseph Stallone in the above-captioned actions ("Coordinated Plaintiffs") seek entry of an order pursuant to: (1) Fed R. Civ. P. 42(a), consolidating *Reichbart v. Financial Business and Consumer Solutions, Inc.*, No. 2:24-cv-01876-NIQA (E.D. Pa.) ("*Reichbart* Action"), and *Stallone v. Financial Business and Consumer Solutions, Inc.*, No. 2:24-cv-01901 (E.D. Pa.) ("*Stallone* Action"), as well as any future related actions that may be filed in, or transferred or removed, to this Court, under the docket of the first-filed *Reichbart* Action (No. 2:24-cv-01876-NIQA) (collectively "Related Actions"); and (2) Fed. R. Civ. P. 23(g), appointing Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"), Andrew W. Ferich of Ahdoot & Wolfson PC ("AW"), and Kristen Lake Cardoso of Kopelowitz Ostrow P.A. ("KO"), counsel of record in *Reichbart* and *Stallone*, as interim co-lead class counsel ("Proposed Co-Lead Counsel").

Coordinated Plaintiffs also request the Court allow Proposed Co-Lead Counsel to create a Plaintiffs' Steering Committee ("PSC") to be comprised of up to three additional attorneys to be appointed at Proposed Co-Lead Counsel's discretion. Proposed Co-Lead Counsel recognize the magnitude of this litigation with nearly two million potential class members may result in additional Related Actions being filed. Rather than await a drawn-out consolidation and leadership appointment process (if and when those cases are filed), in the spirit of efficiency and inclusion, Proposed Co-Lead Counsel intend on populating those positions with qualified counsel from each of the next three cases filed. Without such a mechanism, the litigation may not advance for months while plaintiffs' lawyers debate consolidation and who should be selected to work on this significant litigation.

Consolidation of the Related Actions is appropriate because they arise from the same nucleus of operative facts—a data breach impacting Financial Business and Consumer Solutions,

Inc. ("FBCS") that reportedly exposed confidential and sensitive personally identification information of nearly two million individuals.

Appointment of interim class counsel here is particularly appropriate because, as described below, it is important for Plaintiffs' counsel representing the putative class to speak with one voice. Appointment of interim class counsel now will clarify the roles and responsibilities of counsel on behalf of the class. The risk of declining immediate appointment of interim class counsel includes: (1) duplicative and unnecessary litigation resulting in inefficiencies to the parties and the courts, and (2) a "reverse auction" whereby the lawyers who may subsequently file related cases seek to "sell" a settlement to the defendant at the lowest amount. Only through prompt appointment of well-qualified interim class counsel will the parties and the Court be assured these circumstances will not occur.

Ms. Weekes, Mr. Ferich, and Ms. Cardoso are uniquely qualified to lead this litigation. Already, they have performed substantial work to identify and investigate potential claims in this case. They should be appointed as interim co-lead class counsel for at least the following reasons.

*First,* Proposed Co-Lead Counsel have the experience to effectively lead this litigation on behalf of the putative class. They and their firms have been appointed to leadership positions in many privacy cases and other class actions affecting large classes. The qualifications and experience of Proposed Co-Lead Counsel and their firms is discussed in greater detail in the firm resumes attached as Exhibits 1-3.

*Second*, Proposed Co-Lead Counsel and their respective data breach litigation teams possess extensive knowledge of the applicable law. Their lawyers have heavily litigated, conducted significant discovery (including depositions of information security officers, and technical and damages witnesses and experts), and briefed essentially every aspect of privacy class

action cases. Their experience will allow the Plaintiffs' team to manage issues that are pivotal to the success of this case with great efficiency, including standing, technical issues related to data disclosures and class member identification, and damage evaluation.

*Third*, Proposed Co-Lead Counsel have diligently investigated and prosecuted this case to date. The team has devoted substantial time to investigating the background facts, drafting separate detailed complaints, coordinating with other plaintiffs' counsel, and consulting with a data security expert who will address the extent to which data disclosed in the breach has been publicized for illegal purchase on the dark web or elsewhere. They have been contacted by numerous consumers about this matter, enabling them to thoroughly understand the ways in which consumers have been impacted by the data breach.

*Fourth*, the team will effectively manage the litigation. Proposed Co-Lead Counsel have led numerous complex litigations—including together—and believe that an efficient, well-defined team structure will produce the best results. To that end, Proposed Co-Lead Counsel have agreed to work cooperatively rather than filing competing leadership applications and were able to resolve questions of leadership structure through cooperative private ordering. Through the private ordering process, *see* Manual for Complex Litigation ("MCL"), §§ 10.22, 21.272 (4th ed. 2004), Proposed Co-Lead Counsel have agreed to propose a three-lawyer lead counsel structure and creation of a supporting three-lawyer or three-law firm PSC with an eye toward maximizing litigation efficiency.

*Fifth*, the proposed slate includes diverse lawyers whose combined talent, resources, and perspectives will ensure the efficient and economical prosecution of the case. The diversity of the proposed slate reflects the diversity of the bar and the classes they seek to represent.

*Finally*, the team's members are attorneys at firms which, together, can commit, and will commit, sufficient resources to adequately represent the class.

For the foregoing reasons and those that follow, Coordinated Plaintiffs respectfully request the Court consolidate the Related Actions, appoint Proposed Co-Lead Counsel as interim class counsel, and create a PSC to which three additional lawyers or law firms may be installed by Proposed Co-Lead Counsel.

## I.     BACKGROUND

Financial Business and Consumer Solutions, Inc. is a Hatboro, Pennsylvania-based, nationally licensed debt collection agency that provides accounts receivable management and collection services across a variety of industries. It discovered a data breach ("Data Breach") beginning on or about February 26, 2024. FBCS's investigation revealed that its network was subject to unauthorized access between February 14-26, 2024, and the unauthorized actor(s) was able to view or acquire certain information on the FBCS network during that period. According to FBCS's breach notice letters, the information accessed includes sensitive personal information involving names, Social Security numbers, dates of birth, and account information.

The cases filed to date are listed below:

1. *Reichbart. v. Financial Business and Consumer Solutions, Inc.*, No. 2:24-cv-01876-NIQA (E.D. Pa.), filed May 2, 2024 by AW; and

2. *Stallone v. Financial Business and Consumer Solutions, Inc.*, No. 2:24-cv-01901 (E.D. Pa.), filed May 4, 2024 by Milberg and KO.

The Related Actions involve numerous common questions of law and fact, a common defendant, and relate to the same Data Breach. While Coordinated Plaintiffs' counsel could have each moved for competing leadership positions, they met and conferred and agreed to combine forces through the private ordering process to voluntarily coordinate and jointly litigate for the benefit of the class.

## II.    ARGUMENT

### A.    The Related Actions Should Be Consolidated

Rule 42(a) of the Federal Rules of Civil Procedure provides:

> If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a).

"Rule 42(a) . . . confers upon a district court broad power, whether at the request of a party or upon its own initiate, to consolidate causes for trial as may facilitate the administration of justice." *Cartee-Haring v. Cent. Bucks Sch. Dist.*, Case No. 20-cv-1995, 2021 WL 5506419, at *1 (E.D. Pa. Nov. 24, 2021) (quoting *Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.*, 339 F. 2d 673, 675-76 (3d Cir. 1964)). To this end, courts have recognized that consolidation is appropriate in data breach cases where two or more cases arise from the same occurrence. *See, e.g.*, *Gravley, Sr. v. Fresenius Vascular Care, Inc. d/b/a Azura Vascular Care,* Case No. 2:24-cv-01148-MMB (E.D. Pa. Apr. 30, 2024) (consolidating two related actions, as well as any future actions, arising out of a data breach, and appointing interim co-lead counsel); *Collins v. Rutter's Inc.*, Case No. 1:20-cv-00382, 2020 U.S. Dist. LEXIS 52214, at *6 (M.D. Pa. Mar. 26, 2020) (consolidating two actions, and any future actions, arising out of a data breach, and appointing interim co-lead counsel).

As noted above, the complaints in the Related Actions relate to common factual allegations and legal theories. They assert multiple common causes of action against the same defendant—FBCS—relating to the same factual underpinnings and seek the same relief in response to the same event, i.e., the Data Breach. The Related Actions each seek certification of similar or overlapping classes and allege that Plaintiffs and class members suffered harm because their sensitive personal information was exposed to third parties without their authorization.

Consolidation of the Related Actions is warranted because it will simplify discovery, pretrial motions, class certification issues, and other case management issues, especially given that the cases are at their procedural inception, and it will avoid delay, duplicative litigation efforts, and the risk of inconsistent rulings, without prejudicing any party. The Related Actions present the quintessential consolidation scenario, and the Court should consolidate them to ensure judicial economy and preserve party resources. *See, e.g., Nelson v. Connexin Software Inc.*, No. 2:22-CV-04676, 2023 WL 2721657, at \*1 (E.D. Pa. Mar. 30, 2023) (consolidating similar data breach class actions filed in the same district court).

      **B.**      **The Court Should Appoint Interim Co-Lead Class Counsel**

      **1.**      **Appointing a Three-Lawyer Lead Counsel Structure Is Appropriate Given the Complexity of the Litigation and Claims**

Proposed Co-Lead Counsel believe a three-lawyer leadership structure is the most efficient way to successfully litigate this action and pursue the best recovery for Plaintiffs and the class. Given the enormity of the class (nearly 2 million people), the complexity of the claims, the number of claims alleged, and the sophistication of the clients involved, this structure will maximize recovery, while ensuring efficient prosecution of the claims. Because FBCS is a lucrative, national debt collection agency with substantial resources and top-tier representation, the proposed leadership structure ensures that Plaintiffs will have the necessary resources to litigate the consolidated action. Plaintiffs will have the essential lawyers and capital needed to oppose this corporate defendant.

During all phases of the litigation, Proposed Co-Lead Counsel will, among other things: (i) organize and supervise the efforts of all Plaintiffs' counsel in a manner to ensure that the necessary pretrial preparation is conducted effectively, efficiently, expeditiously, and economically; (ii) delegate work responsibilities as needed, and monitor the activities of any additional Plaintiffs'

counsel to ensure that schedules are met and unnecessary expenditures of time and expense are avoided; (iii) speak for Plaintiffs at all conferences and hearings; (iv) be the only attorneys authorized to  initiate and conduct discussions and negotiations with counsel for FBCS related to the putative class, on all matters, including settlement; (v) determine (after consultation with other co-counsel as may be appropriate) and present in briefs or oral argument to the Court and opposing parties the position of the Plaintiffs on all matters arising during the proceedings; (vi) enter into stipulations with opposing counsel as necessary for the conduct of the litigation; (vii) select, consult with, and employ experts, as necessary, for Plaintiffs; (viii) initiate and conduct discovery on Plaintiffs' behalf, and coordinate its efficiency; and (ix) perform such other duties in connection with prosecuting the claims in this action.

### 2.    Legal Standard for Lead Counsel Appointment

"Rule 23(g)(3) of the Federal Rules of Civil Procedure provides that the Court 'may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.'" *In re Shop-Vac Mktg. & Sales Practices Litig*., MDL No. 2380, 2013 WL 183855, at *1 (M.D. Pa. Jan. 17, 2013) (quoting Fed. R. Civ. P. 23(g)). Early appointments are beneficial in complex cases because they help to "clarif[y] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." MCL § 21.11; *see, e.g.*, *Tolmasoff v. General Motors, LLC*, No. 16-11747, 2016 WL 3548219, at *9 (E.D. Mich. June 30, 2016) (appointing interim class counsel where competing cases "may follow"). Early appointments are particularly important where, as here, other cases may be filed by other counsel in this and other courts. *See, e.g., Beture v. Samsung Elecs. Am., Inc.,* No. CV 17-5757 (SRC), 2018 WL 3159875, at *1 (D.N.J. Mar. 27, 2018) ("This Court is persuaded that it is in the interest of the putative class of Plaintiffs to prevent a competition between counsel, and to

encourage the coordination and cooperation of counsel by granting this motion."); *Demarco v. Avalonbay Cmtys., Inc.*, Civil Action No. 15-628 (JLL), 2015 U.S. Dist. LEXIS 194344, at *7 (D.N.J. Mar. 17, 2015) (early appointment "will promote clarity, efficiency, and greater coordination").

"The same factors governing the appointment of class counsel [at the class certification stage] apply when appointing interim class counsel." *In re Shop-Vac Mktg. & Sales Practices Litig.*, 2013 U.S. Dist. LEXIS 7023, at *6. As a result, courts appointing interim class counsel under Rule 23(g)(1)(A) consider:

(i)   the work counsel has done in identifying or investigating potential claims in the action;

(ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv)  the resources that counsel will commit to representing the class.

*Id.* (citing Fed. R. Civ. P. 23(g)(1)).

As discussed below, each of the relevant Rule 23(g) factors demonstrates that Proposed Co-Lead Counsel, and their law firms are best able to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

**a. Proposed Co-Lead Counsel and Their Law Firms Have Performed Substantial Work in Identifying and Investigating the Claims in This Action**

Proposed Co-Lead Counsel and their law firms have committed appropriate, yet substantial, time and resources to organizing and working toward the advancement of this litigation, investigating and researching the potential legal theories and claims at issue, and researching and reviewing information relating to the factual underpinnings of the Data Breach and this litigation. Proposed Co-Lead Counsel and their law firms are familiar with the facts and

legal issues in this matter based upon their detailed investigation and as a result of communicating with affected persons potentially impacted by the Data Breach.

Their law firms continue to perform substantial work that has been (and will be) valuable to the class as the case moves forward. This includes, but is not limited to, the following: (a) reviewing consumer communications concerning the Data Breach; (b) engaging in ongoing communications with putative class members; (c) investigating the scope of the Data Breach's consequences, and FBCS's public response regarding the same; (d) researching potential claims arising from the Data Breach and defenses thereto; (e) preparing and filing separate, detailed complaints; (f) consulting with and retaining a technical expert to determine whether and the extent to which information disclosed during the Data breach has been made available for sale or otherwise publicized on the dark web; and (g) using their research to begin preparing a detailed, consolidated class action complaint.

Proposed Co-Lead Counsel and their law firms have conducted all the work necessary to prosecute this litigation thus far, and they stand ready, willing, and able to continue devoting the substantial effort and resources (including the advancement of costs) necessary for advancing Plaintiffs' and class members' claims. The Rule 23(g)(1)(A)(i) factor is satisfied.

> **b. Proposed Co-Lead Counsel and Their Law Firms Have Substantial Knowledge About and Are Experienced in Leading and Successfully Resolving Data Privacy Class Actions**

The Rule 23(g)(1)(A)(iii)-(iii) factors are also satisfied. Data privacy cases present unique and novel issues of fact and law that are always evolving. *See, e.g., Gordon v. Chipotle Mexican Grill, Inc.*, Case No. 17-cv-1415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex."); *Fulton-Green v. Accolade, Inc.*, Case No. 18-cv-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is

rare."). Because data breach cases require an understanding of the technical issues of data hacking, data privacy measures, and industry standards, appointing interim co-lead class counsel who are experienced in such complex class action litigation, including data breach litigation and related issues, is in the best interest of the Class. *See Outten v. Wilmington Tr. Corp.,* 281 F.R.D. 193, 200 (D. Del. 2012) ("Experience and knowledge of the law is of the utmost importance when determining lead counsel."). Proposed Co-Lead Counsel and their firms have extensive experience leading and litigating data privacy matters against large corporate defendants such as GEICO, Apple, Google, Zoom, Tik Tok, Kroger, Wawa, Rutter's, GameStop, Managed Care of North America, Fortra, MoveIt, NationsBenefits, Johnson & Johnson, Prudential Insurance Co., Tyco International Ltd., among others. And they have done so together in other cases. *See, e.g., Leitermann, et al. v. Forefront Dermatology SC, et al.*, No. 1:21-cv-00887-LA (E.D. Wis.) (health information data breach class action where final settlement approval was granted and AW and Milberg were appointed as class counsel); *DiPierro, et al. v. Florida Health Sciences Center, Inc.*, Case No. 8:23-cv-01864-KKM-NHA (M.D. Fla.) (health information data breach class action where KO law firm is leading for Plaintiffs and AW is supporting the litigation); *In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Milberg was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers); *In Re: Procter & Gamble Aerosol Products Marketing and Sales Practices Litigation*, 2:22-md-03025-MHW-CMV (N.D. Ohio) (where Milberg serves co-lead class counsel in multi-district litigation against Procter & Gamble and successfully reached a settlement valued over $10 million).

As demonstrated below, Proposed Co-Lead Counsel and their firms are highly qualified to lead this litigation and should be appointed as interim co-lead class counsel pursuant to Fed. R.

Civ. P. 23(g). *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) (stating that the "most persuasive" factors in choosing lead counsel may be proposed counsel's "experience in, and knowledge of, the applicable law in this field").

### Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC

Mariya Weekes is one of the lead cybersecurity attorneys at the international plaintiffs' class action firm Milberg. Since Milberg's founding in 1965, it has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.[1] Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court.[2] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing. Milberg has more than 100 attorneys on staff and offices across the United States and the European Union.

Ms. Weekes is a former Florida State Circuit Court Judge, who sat on the bench for five years. As a Florida Circuit Court Judge, she presided over thousands of complex cases, hundreds of trials, and motions. In her capacity as a Circuit Court Judge, she served on the Circuit's appellate panels reviewing appeals from the lower trial Courts and administrative agencies. Before ascending to the bench, she practiced as a trial lawyer representing individuals and corporations in complex cases throughout the state of Florida. As a practicing attorney, she has personally tried dozens of jury trials to verdict and has participated in many significant cases. Both as a civil trial

---

[1] *See, e.g., In re Tyco International Ltd., Securities Litigation*, MDL 1335 (D.N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.

[2] *See* https://milberg.com/precedent-setting-decisions/page/3/.

lawyer and former prosecutor, she has handled complex cases from their inception through appeal. Since leaving the bench, she now represents individuals and other entities in class action litigation in both state and federal courts.

Ms. Weekes has extensive experience serving as leadership in numerous class actions, including as lead or co-lead counsel in large cases throughout the country. *See, e.g.*, *In Re: LoanCare Data Security Breach Litigation*, 3:23-cv-1508-MMH-MCR (M.D. Fla.) (where Ms. Weekes was appointed co-lead counsel in a consolidated action involving more than 1.5 million consumers); *In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Milberg was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers);[3] *In Re: Procter & Gamble Aerosol Products Marketing and Sales Practices Litigation*, 2:22-md-03025-MHW-CMV (N.D. Ohio) (where Milberg serves co-lead class counsel in multi-district litigation against Procter & Gamble and successfully reached a settlement valued over $10 million); *Delahoy v. Samsung Electronics America Inc. et al.*, 2:22:cv-04132-CCC-CLW (D. NJ) (Milberg appointed as co-lead class counsel to represent a nationwide class alleging Samsung ranges create a safety risk to Plaintiffs and the Class based upon their propensity for unintentional actuation). Milberg's Cybersecurity and Data Privacy Group is largely responsible for developing the favorable case law that many plaintiffs rely on in the data breach space. *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal

---

[3] *See, also Morrill v. Lakeview Loan Servicing, LLC*, Case No. 1:22-cv-20955-DPG (S.D. Fla.) (where Milberg is appointed to the leadership committee in a class action involving 6 million consumers); *Sherwood v. Horizon Actuarial Services, LLC*, Case No. 1:22-cv-01495-ELR (N.D. Ga.) (where Milberg is court-appointed co-lead counsel in a class action involving 4 million consumers).

with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

### Andrew W. Ferich of Ahdoot & Wolfson, PC

Andrew W. Ferich joined AW as a partner at the age of only 33 and just three years later he has extensive experience serving in leadership and support roles in complex class actions, including some of the highest profile data privacy and consumer class action cases. Mr. Ferich is a leading national data privacy practitioner and his firm, AW, is one of the most recognizable data privacy and consumer class action law firms in the United States. Mr. Ferich is intimately familiar with the legal issues that will be at the center of this medical information data breach litigation, and he will harness his experience in, and knowledge of, this area of law to zealously advocate on behalf of Plaintiffs and the putative class members.

Examples of Mr. Ferich's leadership abound. He has been at the forefront of the highly publicized Accellion FTA data breach litigation announced in late 2020. In two of the Accellion cases, final approval was granted, and Mr. Ferich was appointed as co-lead class counsel. *See Harbour, et al. v. California Health & Wellness Plan, et al.*, No. 5:21-cv-03322 (N.D. Cal.) (Hon. Edward J. Davila) (approved $10 million nationwide class action settlement, that also provided robust injunctive relief); *Cochran, et al. v. The Kroger Co., et al.*, No. 5:21-cv-01887-EJD (N.D. Cal.), ECF No. 115 (approved $5 million nationwide class action settlement, that also provided robust injunctive relief).

13

Mr. Ferich has served or is serving as appointed class counsel in numerous data privacy and other consumer class actions. Below are a few additional examples of his numerous appointments and results in data privacy class actions:

- *Gravley, Sr. v. Fresenius Vascular Care, Inc. d/b/a Azura Vascular Care,* Case No. 2:24-cv-01148-MMB (E.D. Pa.), a medical information data breach case where Mr. Ferich was recently appointed by this Court as one of two interim co-lead class counsel;

- *In re Keystone Data Breach Litig.*, No. 1:22-cv-01643-CCC (M.D. Pa.), a health information data breach impacting hundreds of thousands of Pennsylvanians, where Mr. Ferich is appointed as interim co-lead class counsel, and reached a common fund settlement that received final approval in a state court companion case;

- *Nelson v. Connexin Software Inc. d/b/a Office Practicum*, No. 2:22-cv-04676-JDW (E.D. Pa.), a pediatric medical information data breach case that has received preliminary approval of a $4 million common fund settlement, where Mr. Ferich is appointed to a Plaintiffs' Steering Committee;

- *Pessia, et al. v. Warren General Hospital*, Case No. 501-23 (Pa. Common Pleas Warren Cty.), a health information data breach impacting nearly 200,000 patients, where Mr. Ferich is appointed as interim co-lead class counsel;

- *Leitermann, et al v. Forefront Dermatology SC, et al.*, No. 1:21-cv-00887-LA (E.D. Wis.), where the district court recently granted approval of a settlement in a medical privacy matter that included a $3.75 million common fund and appointed Mr. Ferich's and Ms. Weekes' firms as class counsel;

- *Smeltz, et al. v. Logan Health, et al.,* No. A-DV-22-0124 (8th Judicial Dist. Ct., Cascade Cty. Mar. 31, 2022), a medical data breach class action where the sensitive information of hundreds of thousands of Montanans was reportedly exposed to cybercriminals. Mr. Ferich, with co-counsel, reached a $4.3 million common fund settlement with the defendant that has received final approval;

- *Lukens v. Utah Imaging Assocs.*, No. 210906618 (Dist. Ct. Salt Lake Cnty., Utah), a medical data breach case where Mr. Ferich is appointed one of settlement class counsel and helped establish a settlement fund of $2.1 million for approximately 583,642 victims;

- *Briscoe v. First Financial Credit Union*, Case No. D-202-CV-2022-02974 (New Mexico 2d Judicial Dist. Ct. Bernalillo Cty.), a financial information data breach class action where final approval of a $1.6 million common fund settlement was recently granted, and Mr. Ferich was appointed co-lead class counsel; and

- *Kesner, et al. v. UMass Mem'l Health Care, Inc.*, No. 2185 CV 01210 (Mass. Super. Ct.), a medical data breach case where the parties agreed to a $1.2 million common fund settlement that has received final approval from the court, and Mr. Ferich is appointed class counsel.

Mr. Ferich is routinely appointed in other, non-privacy class actions. For example, in *Udeen v. Subaru of Am., Inc.*, No. 18-17334 (RBK) (JS) (D.N.J.), Mr. Ferich was co-lead counsel in a class action alleging a defect in Subaru's Starlink infotainment system. The case resulted in a settlement valued at $6.25 million, and the Court commended Mr. Ferich and his co-counsel, noting that the plaintiffs' team "are very skilled and very efficient lawyers . . . . They've done a nice job."); *see also Steinhardt, et al. v. Volkswagen Group of America, Inc., et al.*, No. 3:23-cv-02291-RK-RLS (D.N.J.) (Mr. Ferich is appointed co-lead counsel in lawsuit alleging defective alternator in certain Audi automobiles); *Cilluffo, et al. v. Subaru of America, Inc., et al.*, No. 1:23-cv-01897-RBK-MJS (D.N.J.) (Mr. Ferich is appointed co-lead counsel in second case against Subaru alleging defective Starlink infotainment systems in certain Subaru vehicles); *Smith, et al. v. VCA Inc., et al.*, No. 2:21-cv-09140-GW-AGR (C.D. Cal.) (Mr. Ferich is class counsel in approved ERISA class action settlement relating to case alleging excessive recordkeeping and administrative fees, and other fiduciary breaches).

As set forth in more detail in the AW firm resume), Mr. Ferich and the lawyers at his firm have led and continue to lead many privacy cases, including those involving data privacy (e.g., *Zoom, Ring, GEICO*), data breaches (e.g., *Experian, Premera, Home Depot, OPM, Chipotle, Kroger, loanDepot*), geo-location tracking (e.g., *Google Location History Litigation*), collection and storing of biometric information (e.g., *Google, Shutterfly, Vimeo*), and TCPA violations (e.g., *Hollister, American Eagle*), as well as many other types of consumer class actions (e.g., *Eck*— $295 million class settlement against City of Los Angeles for unlawful utility taxes). Mr. Ferich and AW are well-equipped to lead this matter on behalf of the class.

## **Kristen Lake Cardoso of Kopelowitz Ostrow P.A.**

Kristen Lake Cardoso is a partner of KO and has been practicing law for 16 years. Established in 1997, South-Florida based KO is one of the leading class-action lawsuit firms in the United States. KO has handled class actions in state and Federal courts throughout the country.

Ms. Cardoso is Co-Chair of KO's Cybersecurity Department. She currently serves as counsel in nationwide and statewide class action lawsuits concerning data breaches, as well as violations of state consumer protection statutes, false advertising, defective products, and breaches of contract. Ms. Cardoso has gained valuable experience representing individuals and businesses in state and federal courts at both the trial and appellate levels in a variety of litigation matters, including contractual claims, violations of consumer protection statutes, fraud, breach of fiduciary duty, negligence, professional liability, real estate claims, enforcement of non-compete agreements, trade secret infringement, shareholder disputes, deceptive trade practices, and other business torts. She has also tried numerous cases at the state court level.

KO is counsel of record in approximately 100 pending data breach cases. Three notable cases in which KO is part of the leadership structure, all among the largest currently pending, include: *Crowe v. Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.), affecting eight million individuals, where KO is Co-Lead Counsel for Plaintiffs; *Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-md-3090 (S.D. Fla.), an MDL involving six million individuals, where KO is MDL Co-Lead Counsel; and *In re HCA Healthcare Data Security Litigation*, No. 3:23-cv-00684 (M.D. Tenn.), affecting eleven million people, where KO is on the Plaintiffs' Executive Committee. KO is also Liaison Counsel in *Skurauskis v. NationsBenefits, LLC*, No. 2:23-cv-60830 (S.D. Fla.) and on the Executive Committee in *Doe v. Highmark, Inc.*, No. 2:23-cv-00250-NR (W.D. Pa.), to name a few.

16

In addition to data privacy and cybersecurity class actions, KO's attorneys are also regularly appointed lead counsel, co-lead counsel, liaison counsel, and class counsel in class actions in federal and state courts involving unlawful bank fees, antitrust, product liability, false advertising, insurance, and other consumer protection violations. KO is currently co-lead counsel in *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 9:20-md-02924-RLR (S.D. Fla.), which is one of the largest mass tort and class actions in MDL history. For the past 13 years, KO has served as Coordinating Counsel, Settlement Class Counsel, and Lead Class Counsel in *In re Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK (S.D. Fla.), another large MDL that resulted in the recovery of $1.2 billion from the nation's largest banks, and as Liaison Counsel in *In re Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-2626-HES-JRK (M.D. Fla.), an antitrust class action with $85 million recovered to date. Moreover, KO is co-counsel for Broward County and the City of Fort Lauderdale in *In re: National Prescription Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio), and for the Broward and Miami-Dade County School Boards in *In re Juul Labs*, No. 19-md-2913 (N.D. Cal.) helping our clients recover $100 million and $26 million, respectively. To date, these efforts have resulted in the resolution of more than 150 class cases totaling billions of dollars for class members. In many of those settlements, KO also secured monumental and meaningful industry-altering practice changes collectively worth billions of dollars. Ms. Cardoso and KO are well-equipped to lead this matter on behalf of the class.

### c. Proposed Co-Lead Class Counsel Are Committed to Representing and Advancing the Interests of the Class

Proposed Co-Lead class counsel are willing and able to expend the resources necessary to ensure the vigorous prosecution of the claims asserted by the Plaintiffs. Ms. Weekes, Mr. Ferich, Ms. Cardoso, and their firms have a proven track-record of success leading complex class action cases, including data privacy matters. The experience here will be no different. Each attorney

understands the time, energy, and skill necessary to lead this litigation and all have committed the resources required to ensure the effective and efficient representation of the class members. In fact, Proposed Co-Lead Counsel have already demonstrated their commitment to this litigation by devoting substantial resources—including retention of a cybersecurity expert—to this litigation and coordinating among themselves to file this leadership proposal.

Just as they have previously done, Proposed Co-Lead Counsel are committed to working cooperatively and efficiently on behalf of Plaintiffs and the proposed class here. As Proposed Co-Lead Counsel's history of organization shows, they are inclusive, hence the decision to request creation of a PSC now so that they may include counsel from future related actions. Their past efforts of inclusion have resulted in a group of attorneys working toward the proper goal—a fair, reasonable, and adequate result. Each of the proposed lead attorneys would be independently qualified to serve as lead class counsel and have significant experience in class actions, including data breach class actions.

In sum, Proposed Co-Lead Counsel are committed to pursuing the best interests of Plaintiffs and the class in an efficient manner. They understand the time and resources necessary to pursue this action to a successful resolution. Their firms already have made significant investments of resources and time into the prosecution of these claims, and they possess the resources to prosecute this case to a successful resolution and will do so here. The Rule 23(g)(1)(A)(iv) factor is satisfied.

### d.  Additional Factors Supporting Appointment Under Rule 23(g)(1)(B)

The Court may also consider other matters in making appointments, per Rule 23(g)(1)(B). One consideration here is that Proposed Co-Lead Counsel reached a cooperative agreement about the proposed leadership structure. Rather than file competing leadership applications, counsel met and conferred and agreed that it is in the best interest of the Plaintiffs and putative class members

to form a unified front and cooperatively litigate the claims arising from the Data Breach against FBCS. This private ordering reflects a high level of leadership further supports the requested appointments. MCL, §§ 10.22, 21.272.

A second consideration is that the proposed leadership slate is diverse, comprised of attorneys who come from diverse backgrounds reflective of the diversity of the bar and the classes they seek to represent—from the standpoint of age, gender, experience, and geographic location. *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45-46 (2d ed. 2018), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf ("The judge's primary responsibility in the selection process is to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds.").

A final consideration is that Proposed Co-Lead Counsel include lawyers with a Pennsylvania presence. Mr. Ferich is a career-long Pennsylvania attorney who long has been admitted to practice in the Commonwealth of Pennsylvania and has practiced in the Eastern District throughout his career. Likewise, the law firm KO has a Philadelphia office managed by Kenneth Grunfeld, a partner of the firm who has been practicing in Pennsylvania for nearly 25 years. Mr. Grunfeld's primary practice is data breach litigation, and he will be working on this litigation.

The court in *City of Providence, Rhode Island v. AbbVie Inc.*, No. 20-CV-5538, 2020 WL 6049139 (S.D.N.Y. Oct. 13, 2020), highlighted the importance of familiarity with local practice in selecting lead counsel:

> Admission to the bar of [this district] requires and reflects a commitment to practice in this District and to abide by its rules and practices. ... At a practical level, counsel long admitted to this Court, and who plan to continue to practice in this Court, are presumptively steeped in its mores and traditions. That provides the Court some comfort that both those who will appear in Court and those who will operate behind-the-scenes in document production and deposition will adhere to and benefit from familiarity with those traditions. Finally, in terms of the sheer cost that will be charged to the class (in the event of recovery), a significant presence in [this district] for a litigation in [this district] against a [local] defendant matters. This case will be tried in [this district], arguments and motion practice will be in [this district], and presumably many of the depositions will be taken in [this district]. Counsel who are in [this district] will be able to handle those matters without travel.

*Id.* at \*7. The presence of Mr. Ferich, a Philadelphia-based lawyer, on the proposed leadership team, and inclusion of KO, a law firm with Philadelphia ties, further supports the requested appointments.

## III.   CONCLUSION

For the reasons set forth above, Plaintiffs request the Court grant their motion and enter an order: (1) consolidating the Related Actions pursuant to Fed. R. Civ. P. 42(a) under the caption of the first-filed *Reichbart* Action, and administratively terminate the *Stallone* Action; (2) appoint Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC, Andrew W. Ferich of Ahdoot & Wolfson, PC, and Kristen Lake Cardoso of Kopelowitz Ostrow P.A. as interim co-lead class counsel pursuant to Fed. R. Civ. P. 23(g); (3) establish a Plaintiffs' Steering Committee to which three additional lawyers or law firms that file related future actions may be installed by interim class counsel at their discretion; and (4) set a deadline for Plaintiffs to file a consolidated complaint 30 days from entry of the consolidation order.

20

Dated: May 6, 2024

/s/ Andrew Ferich
**AHDOOT & WOLFSON, PC**
Andrew W. Ferich (PA I.D. 313696)
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Tel.: (310) 474-9111
Fax: (310) 474-8585
aferich@ahdootwolfson.com

Melissa Clark*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Tel.: (310) 474-9111
mclark@ahdootwolfson.com

Mariya Weekes*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2ND Floor
Coral Gables, FL 33134
Tel: (786) 879-8200
mweekes@milberg.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866-252-0878
Fax: 865-522-0049
gklinger@milberg.com

Kristen Lake Cardoso*
Jeff Ostrow*
**KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: 954-525-4100
cardoso@kolawyers.com
ostrow@kolawyers.com

*Proposed Interim Co-Lead Counsel*

*\*pro hac vice* pending or to be filed

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on this 6th day of May, 2024, a true and correct copy of the above and foregoing was filed with the Clerk of Court via the Court's CM/ECF system for electronic service on all counsel of record and sent via certified mail/return receipt requested to Defendant Financial Business and Consumer Solutions, Inc., at its principal place of business, located at 330 S. Warminster Road, Suite 353, Hatboro, Pennsylvania 19040.

Dated: May 6, 2024                                 /s/    Andrew Ferich
                                                              Andrew W. Ferich